IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO.:

FILED BY ___MQ___ D.C.

Aug 4, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

LEONARDO CRESPO,

   Plaintiff,

v.

PALM BEACH STATE COLLEGE DISTRICT BOARD OF TRUSTEES;

ERIN SULLIVAN, in her individual and official capacities;

DR. DESTINY KEEN, in her individual and official capacities;

JYRECE MCCLENDON, in her individual and official capacities; and

SHEILA E. SCOTT-LUBIN, in her individual and official capacities,

   Defendants.

_____/

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

**DEMAND FOR JURY TRIAL**

Plaintiff, LEONARDO CRESPO ("Plaintiff" or "Mr. Crespo"), by and through himself, *pro se*, sues Defendants, PALM BEACH STATE COLLEGE DISTRICT BOARD OF TRUSTEES, ERIN SULLIVAN, DR. DESTINY KEEN, JYRECE MCCLENDON, and SHEILA E. SCOTT-LUBIN (collectively "Defendants"), and alleges as follows:

**I. INTRODUCTION**

1. This is a civil rights and contract action arising from Defendants' unlawful retaliation against Plaintiff for his exercise of constitutionally protected speech, and for their arbitrary,

1

capricious, and bad-faith actions that deprived Plaintiff of his constitutional and contractual rights to an education.

2. Despite being an exemplary student who maintained a 99% average on all submitted coursework in the Spring 2025 course SLS 1501-130, "Introduction to the College Experience," Plaintiff was assigned a failing grade in that course. This adverse academic action was not based on academic performance but was the direct result of a series of contrived and factually baseless "absence" penalties imposed by his instructor, Defendant Erin Sullivan.

3. These penalties were a **pretext** for unlawful punishment. The retaliatory scheme was initiated immediately after Plaintiff submitted a good-faith critical essay regarding the course's curriculum. Defendant Sullivan's written response—"**I do take offense**" (**Exhibit C**)—is direct evidence of her retaliatory animus. By rebranding Plaintiff's academic dissent and selective non-participation in educationally unsound tasks as "absence," Defendants created a pretextual basis to invoke a harsh attendance policy and assign an automatic failing grade—a gross distortion of academic authority.

4. Defendants Keen, McClendon, and Scott-Lubin, in their supervisory capacities, were made aware of Defendant Sullivan's unconstitutional conduct through a formal and detailed appeal containing this "smoking gun" evidence. They acted with deliberate indifference by failing to investigate the core claim of retaliation and instead ratified the misconduct through a deficient, evasive, and procedurally flawed internal review process, thereby establishing the official policy and custom of Defendant Palm Beach State College (**Exhibit B, Exhibit J, Exhibit L**).

2

5. Plaintiff seeks redress for these violations under the First and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, and for breach of implied contract under the laws of the State of Florida.

## II. JURISDICTION, VENUE, AND IMMUNITY

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) because Plaintiff's claims arise under the Constitution and laws of the United States, specifically the First and Fourteenth Amendments and 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy.

8. Venue is proper in the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Palm Beach County, Florida, at the Palm Beach Gardens campus of Palm Beach State College, where all Defendants operate or are employed.

9. **Clearly Established Rights and Qualified Immunity.** The constitutional rights violated by the individual Defendants—including the First Amendment right of a public college student to be free from academic sanctions in retaliation for criticizing curriculum and the Fourteenth Amendment right to be free from arbitrary deprivations of a property interest in education—were clearly established at all relevant times. No reasonable official in Defendants' positions could have believed their conduct was lawful. Therefore, Defendants Sullivan, Keen, McClendon, and Scott-Lubin are not entitled to qualified immunity.

10. **Sovereign Immunity and Capacities.** Plaintiff seeks monetary damages, including

3

compensatory and punitive damages, only from Defendants Sullivan, Keen, McClendon, and Scott-Lubin in their **individual capacities**. Plaintiff seeks only prospective declaratory and injunctive relief against Defendant Palm Beach State College District Board of Trustees and against the individual Defendants in their **official capacities**. This action is therefore not barred by the Eleventh Amendment.

### III. THE PARTIES

11. Plaintiff, **LEONARDO CRESPO**, is an individual and a resident of Palm Beach County, Florida. At all times relevant, he was a student in good standing at Palm Beach State College ("PBSC").

12. Defendant, **PALM BEACH STATE COLLEGE DISTRICT BOARD OF TRUSTEES** (the "Board"), is the governing body of PBSC, a public college and a political subdivision of the State of Florida. The Board is responsible for the policies, customs, and practices of PBSC and its employees.

13. Defendant, **ERIN SULLIVAN** ("Professor Sullivan"), is an individual who, at all times relevant, was employed by PBSC as an Associate Professor. She was acting under color of state law in her capacity as Plaintiff's instructor.

14. Defendant, **DR. DESTINY KEEN** ("Associate Dean Keen"), is an individual who, at all times relevant, was employed by PBSC as the Associate Dean of Academic Readiness and Retention. She was acting under color of state law in her supervisory capacity.

15. Defendant, **JYRECE MCCLENDON** ("Dean McClendon"), is an individual who, at all times relevant, was employed by PBSC as the Dean of the Palm Beach Gardens campus. She was acting under color of state law as a decision-maker in Plaintiff's appeal.

4

16. Defendant, **SHEILA E. SCOTT-LUBIN** ("Associate Vice President Scott-Lubin"), is an individual who, at all times relevant, was employed by PBSC as the Associate Vice President, Academic Affairs. She was acting under color of state law as the final decision-maker in Plaintiff's appeal process.

## IV. FACTUAL ALLEGATIONS

### A. The Course, The Syllabus, and Plaintiff's Excellent Performance

17. In the Spring 2025 semester, Plaintiff was enrolled in course SLS 1501-130, "Introduction to the College Experience," taught by Defendant Sullivan. A true and correct copy of the course syllabus is attached as **Exhibit A**.

18. The syllabus states that "Attendance and Participation" comprises only 5% of the total course grade. It also contains a clause stating that "four or more absences will result in the student failing the course" (**Exhibit A**).

19. Plaintiff was a diligent and high-performing student in course SLS 1501-130. On all graded coursework submitted for that specific course, Plaintiff maintained an academic average of 99%.

20. During the term, Plaintiff was recovering from a documented medical surgery on January 31, 2025, that temporarily limited his ability to speak at full capacity, a fact made known to Defendant Sullivan both in person and via email on January 27, 2025.

### B. The Inciting Incident: Protected Speech and Immediate Retaliation

21. On February 24, 2025, at 10:40 a.m., during class time, Plaintiff submitted an assignment via the college's Canvas system titled "Extra Credit Campus Activity Paper." A true and

5

correct copy of the submitted paper is attached as **Exhibit G, pp. 2-3**.

22. The paper was a 400-plus-word essay expressing good-faith constructive criticism of the PBSC curriculum, stating that his required courses were "in no way connected to Health and Exercise Science," his chosen field of study (**Exhibit G, pp. 2-3**). The essay also critiqued pedagogical methods, such as minimum word count requirements, noting that "[i]n the real world you're rewarded for conciseness and objectivity." Plaintiff explicitly framed his submission as constructive, concluding, "I would appreciate it if this is taken as constructive criticism and positive feedback and whoever is reading this is not offended." This submission constituted non-disruptive speech on a matter of academic and public concern protected by the First Amendment.

23. Later that day, Defendant Sullivan provided written feedback on Canvas, stating: "**I do take offense** to you writing this in class before leaving altogether rather than participating in anything we did today. Your message is misinformed and misdirected. I don't understand what your objective was rather than to be disrespectful." (**Exhibit C**).

24. Contemporaneously with expressing her personal offense, and in direct retaliation for Plaintiff's protected speech, Defendant Sullivan imposed a double penalty: she assigned a zero grade for the assignment and marked Plaintiff "absent" for the entire February 24 class session, despite his physical presence.

### C. The Retaliation's "Chilling Effect" and a Pattern of Arbitrary Penalties

25. The retaliatory action on February 24 created a distinct constitutional injury by foreseeably "chilling" Plaintiff's future speech. On March 22, a "Midpoint Journal" assignment was due, which explicitly solicited honest feedback (**Exhibit H**). Given Defendant Sullivan's

6

documented hostile reaction to his prior critique, Plaintiff was placed in an impossible dilemma: either engage in self-censorship by submitting a dishonest, positive review, or risk further punishment for his views. His resulting inability to complete the assignment was not an academic lapse but a direct result of the hostile, retaliatory environment created by Defendant Sullivan, demonstrating a distinct and ongoing constitutional harm that continued to suppress Plaintiff's First Amendment rights.

26. On March 24, 2025, Defendant Sullivan conducted a non-graded, in-class activity requiring students to memorize a list of Disney characters as part of a "peg memory" mnemonic activity. The characters included, among others, **"Cheshire Cat," "Peter Pan,"** and **"Rapunzel"** (**Exhibit E**). Plaintiff, while physically present, respectfully declined to participate, viewing the assignment as juvenile and lacking any legitimate academic relevance to a college-level course.

27. As a direct result, Defendant Sullivan marked Plaintiff "absent" for the March 24 class session, despite his confirmed physical presence. This "absence" was factually false and served as further punishment for Plaintiff's earlier protected speech.

28. On March 31, 2025, Defendant Sullivan conducted another non-graded, in-class activity. This activity was a "group practice test" designed to teach students "how to guess" answers on multiple-choice tests using random trivia entirely outside the course subject matter. The questions included obscure facts such as **"theories about the state of the dead in the Odyssey,"** and **"the electrical field inside a hollow metallic charge sphere"** (**Exhibit E**). Plaintiff again declined to participate due to its lack of educational value.

29. As a direct result, Defendant Sullivan marked Plaintiff "absent" for the March 31 class

7

session, despite his confirmed physical presence. This "absence" was also factually false and pretextual.

### D. The Failing Grade and the Pretextual Internal Appeal Process

30. On April 1, 2025, Defendant Sullivan notified Plaintiff via email that he had failed the course due to the accumulation of four absences (**Exhibit D**).

31. By leveraging the absence policy, Defendant Sullivan effectively made participation in these specific, non-graded exercises carry 100% weight (failure), a grossly disproportionate penalty that directly contradicts the syllabus's own grading scheme, which allots only 5% of the total grade to "Attendance and Participation" (**Exhibit A**).

32. Plaintiff immediately initiated the internal appeal process. In a virtual meeting on April 22, 2025, attended by Plaintiff, Defendant Keen, and Student Ombudsman Marileidy Guzman, Defendant Keen admitted she had no prior knowledge of the Disney and trivia assignments. In a follow-up email summarizing the meeting, Plaintiff confirmed that Dean Keen had stated the syllabus was a "binding contract" and that failing a student for non-participation in the Disney assignment was a "proportional penalty" under its provisions. This email summary, sent on April 22, 2025, at 12:43 PM, went uncorrected by Dean Keen (**Exhibit B**).

33. On June 2, 2025, Defendant McClendon issued a formal letter denying Plaintiff's appeal (**Exhibit J**). The letter praised Professor Sullivan's "willingness to create and uphold clear, structured policies, while also being flexible," and concluded her actions were "appropriate." This was despite acknowledging that the penalties were for non-participation and that Plaintiff was physically present.

8

34. Defendant McClendon's denial letter attempted to provide a **post-hoc rationalization** for the academically baseless assignments by claiming they corresponded with broad Course Learning Outcomes like "Develop and strengthen college-level academic skills." This justification was plainly **pretextual**, as it was directly contradicted by Defendant Keen's prior admission that she was unaware of these assignments, demonstrating that the administration's official reason was not genuine but was concocted after the fact to defend the initial retaliatory conduct (**Exhibit B, Exhibit J**).

35. The denial letter from Defendant McClendon completely failed to acknowledge or address Plaintiff's central allegation of First Amendment retaliation, demonstrating deliberate indifference.

36. The appeal process was further tainted by Defendants' refusal to provide Plaintiff with adequate notice of the charges against him. On multiple occasions in writing, Plaintiff asked Defendants Sullivan and Keen to identify the specific rule he had allegedly violated, stating, "Could you please clarify which specific part of the syllabus or school rules led to my being marked as absent...?" (**Exhibit Q**). In response, Defendant Sullivan evasively linked to the entire 17-page syllabus, and Defendant Keen responded with the vague statement that "there was a violation in the attendance and participation policies outlined in the course syllabus" (**Exhibit Q, Exhibit R**). This persistent refusal to provide a specific rule for a specific alleged infraction constituted a denial of constitutionally adequate notice, rendering a meaningful defense impossible (**Exhibit O, Exhibit P**).

### E. Exhaustion of Administrative Remedies

37. Plaintiff timely filed a final appeal on June 2, 2025, assigned Confirmation #00003220

(**Exhibit M**).

38. Plaintiff also filed a formal Student Problem Resolution Form regarding these events, assigned IR #00003148 (**Exhibit K**).

39. PBSC's own policy, as cited in writing by the Student Ombudsman, requires the committee chairperson to "convene the committee" "[w]ithin fifteen (15) business days of the receipt of the student's appeal" (**Exhibit N**).

40. The 15-business-day deadline passed on or about June 23, 2025. PBSC failed to convene the committee or render a decision within its own mandated timeline, thereby breaching its own procedural rules.

41. On July 8, 2025, well after the mandated deadline, Defendant Scott-Lubin, in her capacity as Associate Vice President of Academic Affairs, issued the final decision letter on behalf of "Academic Affairs Leadership." The letter stated that leadership supported the committee's recommendation, that "the final grade will not be changed," and that the "decision is FINAL and cannot be appealed" (**Exhibit L**). This letter constituted the final ratification of the unconstitutional conduct by the highest level of the college's academic administration.

42. Plaintiff has therefore exhausted all available and adequate administrative remedies, and any further delay is futile.

**F. Subsequent Harm: Delayed Academic Progression and Financial Loss**

43. The retaliatory failing grade had immediate, foreseeable, and damaging consequences for Plaintiff's academic progression. On or about July 3, 2025, Plaintiff attempted to register for a required Fall 2025 course, MAT 1033C (Intermediate Algebra).

44. Plaintiff was blocked from registering for this required course. On July 9, 2025, a PBSC

10

academic advisor, Sam Miranda, definitively confirmed in writing, "Yes, that is the issue," referring to the failing grade in SLS 1501 being the cause of the registration block (**Exhibit I**).

45. This registration block, a direct result of Defendants' unlawful actions, has delayed Plaintiff's graduation timeline, forcing him to extend his studies and incur demonstrable costs, including but not limited to additional tuition, fees, and living expenses.

## V. CAUSES OF ACTION

## COUNT I – FIRST AMENDMENT RETALIATION

**(42 U.S.C. § 1983)**

(Against Defendants Sullivan, Keen, McClendon, and Scott-Lubin in their Individual Capacities)

46. Plaintiff re-alleges and incorporates paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiff's submission of the critical essay on February 24, 2025, constituted speech on a matter of public concern and was protected by the First Amendment. As a university student, Plaintiff's speech is entitled to robust constitutional protection. The Eleventh Circuit has recognized that "it's not at all clear that *Tinker's* more lenient standard applies in the university—as opposed to the elementary- and secondary-school—setting," and that "universities occupy a special niche in our constitutional tradition." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127 n.6 (11th Cir. 2022). As a student, Plaintiff's speech is that of a private citizen critiquing a state service, not that of a government employee speaking pursuant to official duties, and is therefore entitled to the highest level of First Amendment protection.

48. Defendants, acting under color of state law, took adverse academic actions against Plaintiff,

11

including assigning punitive and factually false "absence" penalties and ultimately a failing grade, which are sufficiently severe to deter a person of ordinary firmness from engaging in protected speech.

49. Plaintiff's protected speech was a substantial or motivating factor in the adverse actions, as established by direct evidence, including Defendant Sullivan's written statement, "I do take offense" (**Exhibit C**), the close temporal proximity between the speech and the adverse action, and the subsequent chilling effect on Plaintiff's speech.

50. Plaintiff's critique caused no material or substantial disruption to instruction or college operations.

51. Defendants Keen, McClendon, and Scott-Lubin were made personally aware of the retaliatory conduct through Plaintiff's detailed appeals, which included the direct evidence of retaliatory animus. By acting with deliberate indifference to the violation and ratifying the pretextual punishment, they became personally involved in and were the proximate cause of the ultimate deprivation of Plaintiff's rights, as their approval was required to make the retaliatory failing grade final and effective.

52. The unconstitutionality of Defendants' conduct was clearly established. The Eleventh Circuit's precedent in *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012), put any reasonable university official on notice that retaliating against a student for protected speech by using a baseless pretext is unlawful. In *Barnes*, the university president was denied qualified immunity after expelling a student for his protected speech (protesting a university policy) under the pretext that he was a "danger" to campus. Here, Defendant Sullivan, ratified by Defendants Keen, McClendon, and Scott-Lubin, punished Plaintiff for his protected speech

(criticizing a university curriculum) under the pretext that he was "absent." In both cases, officials used a factually unsupported justification to punish a student for his views. Therefore, it was clearly established that Defendants' retaliatory scheme violated the First Amendment.

53. The actions of Defendants Sullivan, Keen, McClendon, and Scott-Lubin were taken with malice or with reckless and callous indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

## COUNT II – VIOLATION OF SUBSTANTIVE DUE PROCESS
## (Fourteenth Amendment via 42 U.S.C. § 1983)

(Against Defendants Sullivan, Keen, McClendon, and Scott-Lubin in their Individual Capacities)

54. Plaintiff re-alleges and incorporates paragraphs 1 through 45 as if fully set forth herein.
55. As a student at a public college, Plaintiff has a constitutionally protected property interest in his continued education and academic record.
56. Defendants deprived Plaintiff of this interest through actions that were arbitrary, capricious, and lacked any rational relationship to a legitimate pedagogical objective. The decision to fail Plaintiff was not a genuine exercise of professional judgment. Rather, it was "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).
57. Failing a student with a 99% coursework average in the course for respectfully declining to memorize Disney characters and participate in a trivia game is a substantial departure from accepted academic norms. The administration's contradictory and pretextual justifications

further demonstrate that their review was not a careful and deliberate exercise of professional judgment, but a ratification of arbitrary and retaliatory conduct. This conduct does not represent a professional judgment with which one could merely disagree; rather, it represents an abandonment of professional judgment altogether, transforming an academic evaluation into an arbitrary exercise of state power that shocks the conscience.

**COUNT III – VIOLATION OF PROCEDURAL DUE PROCESS**

**(Fourteenth Amendment via 42 U.S.C. § 1983)**

(Against Defendants Sullivan, Keen, McClendon, and Scott-Lubin in their Individual Capacities)

58. Plaintiff re-alleges and incorporates paragraphs 1 through 45 as if fully set forth herein.

59. Defendants deprived Plaintiff of his property interest in his education without the procedural due process guaranteed by the Fourteenth Amendment.

60. The failing grade assigned to Plaintiff was not an "academic" decision but a "disciplinary" one. It was not based on an evaluation of academic mastery—in which Plaintiff excelled—but was imposed as punishment for alleged misconduct (i.e., being "disrespectful" and "not engaging"). The Supreme Court has recognized that there are "distinct differences between decisions to suspend or dismiss a student for disciplinary purposes and similar actions taken for academic reasons which may call for hearings in connection with the former but not the latter." *Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 87 (1978).

61. The Defendants' decision to apply the attendance policy in a manner that made non-participation in a non-graded activity worth 100% of the course grade, thereby nullifying the syllabus's own scheme wherein "Attendance and Participation" accounts for

14

only 5%, demonstrates that the action was not a good-faith academic application of the syllabus, but a punitive, disciplinary sanction designed to achieve a predetermined outcome.

62. Because the action was disciplinary in nature, Plaintiff was entitled to more stringent procedural protections. The minimal process afforded was constitutionally insufficient. Due process required, at a minimum, clear notice of the specific rule allegedly violated and a meaningful opportunity to be heard on the central charge of retaliation, neither of which was provided, as documented in **Exhibits O, P, Q, and R**.

63. The law was clearly established in the Eleventh Circuit that university officials cannot deprive a student of his protected interest in continued education on pretextual grounds without affording him due process. In *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012), the Eleventh Circuit denied qualified immunity to a university president who expelled a student for his protected speech under the baseless pretext that the student was a "clear and present danger." Just as President Zaccari could not use a factually unsupported pretext to circumvent the student's due process rights in *Barnes*, Defendants here could not use the factually baseless pretext of "absences" to impose a failing grade in retaliation for Plaintiff's speech while denying him a meaningful opportunity to be heard on the actual basis for the punishment. A reasonable official would have been on notice that such conduct violates clearly established constitutional rights.

64. Furthermore, Defendant Board, through its agents, failed to adhere to its own established procedures by not convening the Final Course Grade Appeal Committee within the mandated 15-business-day deadline, and then denying a hearing altogether, thereby depriving Plaintiff of a timely and final resolution as promised in its policies (**Exhibit L,**

15

**Exhibit N**).

## COUNT IV – BREACH OF IMPLIED CONTRACT AND THE COVENANT OF GOOD FAITH AND FAIR DEALING

**(Florida State Law)**

**(Against Defendant Board)**

65. Plaintiff re-alleges and incorporates paragraphs 1 through 45 as if fully set forth herein.

66. The relationship between Plaintiff and PBSC is contractual in nature under Florida law, with terms derived from the college's publications, including the syllabus (**Exhibit A**) and Student Handbook.

67. Every contract in Florida contains an implied covenant of good faith and fair dealing, which holds that neither party will do anything that will injure the right of the other to receive the benefits of the agreement.

68. Defendant Board, through its agents, breached the implied contract and the covenant of good faith and fair dealing by: (a) fabricating absences for a present student as a pretext for retaliation; (b) enforcing compliance with academically irrelevant tasks under threat of failure; and (c) exercising its discretion in bad faith by imposing a grossly disproportionate penalty that frustrated the contract's purpose and deprived Plaintiff of the benefit of his bargain—a bargain which Defendant Keen herself admitted constituted a "binding contract" (**Exhibit B**).

69. The defense of sovereign immunity does not bar this claim. The Florida Supreme Court has recently affirmed that the state's waiver of sovereign immunity for suits on an express, written contract extends to claims for breach of the implied covenants inherent in that

16

contract. *See Rojas v. Univ. of Fla. Bd. of Trs.*, No. SC2023-0126, slip op. (Fla. July 17, 2025).

70. In *Rojas*, the Court explicitly held that the waiver-by-contract doctrine does not impose a "requirement for extraordinary specificity in government contracts" and does not "preclude claims based on the breach of implied covenants or conditions that do not conflict with express contract provisions." *Id.*

71. By exercising its contractual discretion in bad faith to punish Plaintiff for his protected speech and to enforce arbitrary and educationally unsound requirements, the Defendant Board, through its agents, acted inconsistently with Plaintiff's reasonable expectations under the educational agreement and frustrated the contract's essential purpose. This conduct injured Plaintiff's right to receive the benefits of his agreement, in direct violation of the implied covenant of good faith and fair dealing.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Leonardo Crespo respectfully requests that this Honorable Court enter judgment in his favor and grant the following relief:

A. A **declaratory judgment** that Defendants' actions violated Plaintiff's rights under the First and Fourteenth Amendments and breached the implied contract between Plaintiff and the Board;

B. Injunctive relief compelling Defendant Board to:

  i. Immediately reverse and expunge the failing grade in SLS 1501-130 from Plaintiff's academic record;

  ii. Recalculate Plaintiff's final grade in SLS 1501-130 to accurately reflect his 99%

   coursework average;

   iii. Expunge from Plaintiff's permanent academic record any and all notations related to the contested absences and the failing grade; and

   iv. Immediately remove any administrative blocks on Plaintiff's account and permit his registration for MAT 1033C and any other courses for which the unlawful failing grade in SLS 1501 was a prerequisite.

C. An award of compensatory damages against Defendants Sullivan, Keen, McClendon, and Scott-Lubin in their individual capacities, in an amount to be determined at trial, for economic losses, including tuition and fees for the SLS 1501 course and for economic losses resulting from delayed academic progression, including but not limited to additional tuition, fees, and living expenses incurred by the need to extend his course of study, and for non-economic damages, including emotional distress and reputational harm;

D. An award of **punitive damages** against Defendants Sullivan, Keen, McClendon, and Scott-Lubin in their **individual capacities** for their willful, malicious, and/or reckless and callous indifference to Plaintiff's federally protected rights;

E. An award of Plaintiff's reasonable **attorney's fees and costs** incurred in this action pursuant to 42 U.S.C. § 1988; and

F. Such other and further relief as this Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

## VIII. VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 4, 2025.

Respectfully submitted,

*[signature]*

Leonardo Crespo, Plaintiff, Pro Se
1128 Crystal Drive, Palm Beach Gardens, FL 33418
leo@leocrespo.com
725-225-6889